[Cite as *State v. Young*, 2012-Ohio-2352.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 11CA010080 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LORENZO A. YOUNG | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 10CR081638 |

DECISION AND JOURNAL ENTRY

Dated: May 29, 2012

WHITMORE, Presiding Judge.

{¶1}  Defendant-Appellant, Lorenzo Young, appeals from his convictions in the Lorain County Court of Common Pleas.  This Court affirms.

I

{¶2}  During the early morning hours of July 29, 2010, an armed man entered the home of Leann Janickes and demanded money.  Janickes was not home at the time, but her daughter, Lexie Lorenzana, her grandchild, and her grandchild's mother, Atra Mclemore, were there.  The gunman forced the two women to take part in a search of the home, insisting that Janickes' son, Andrew, kept money and drugs there.  Andrew generally stayed at his mother's home, but was taken into custody on drug charges in the 24 hours preceding this incident.  After the gunman finished searching the home, he ordered the two women to lie down on the bed and cover themselves while he escaped.

{¶3} Both Lorenzana and Mclemore described a cross tattoo that the gunman had on his forearm and the gun the man used, but only Mclemore was able to give a physical description of the man. Lorenzana later gave the police a picture of a man she found on Facebook because she believed the man was the gunman. Mclemore viewed the picture with the detective assigned to the case and agreed that the picture depicted the gunman. The police arrested Young, the man in the picture, based on the identification the two women made.

{¶4} A grand jury indicted Young on the following counts: (1) two counts of kidnapping, in violation of R.C. 2905.01(B)(2); (2) two counts of aggravated robbery, in violation of R.C. 2911.01(A)(3); and (3) two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1). All of the counts contained attendant repeat violent offender specifications. After Young waived his right to a jury trial, a bench trial ensued. The trial court found Young not guilty of one of the aggravated burglary counts, but guilty of the remaining counts and specifications. The court sentenced Young to six years in prison.

{¶5} Young now appeals from his convictions and raises one assignment of error for our review.

II

Assignment of Error

THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. YOUNG'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶6} In his sole assignment of error, Young argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶7}** In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

**{¶8}** Young argues his convictions are against the manifest weight of the evidence because the victims offered inconsistent descriptions of the gunman and the events that occurred on the night in question. He claims that the victims gave faulty identifications and that, apart from their identifications, the State did not produce any other evidence linking him to the crimes.

**{¶9}** Lorenzana testified that a male friend of hers visited her shortly before Young arrived and that Young entered the home when her male friend opened the front door to leave. Lorenzana ran to the bedroom where Mclemore was sleeping with her son. Young followed Lorenzana to the bedroom and threatened the two women and the child while demanding the money and drugs he believed Andrew kept in the house. According to Lorenzana, Young forced

her to search the bedrooms while Mclemore remained in bed with her son. According to Mclemore, Young forced both women to help with the search and, at one point, held her son. Lorenzana testified that she knew what Young's face looked like, but was not able to articulate a description. Instead, she described the cross tattoo on Young's forearm and the gun he used in the commission of the crimes. Mclemore estimated Young's height, weight, and appearance. She also described Young's tattoo and the gun he carried. Moreover, while Lorenzana was unable to articulate a description of Young, she unequivocally identified Young in the Facebook photograph once she saw it and identified him at trial.

{¶10} Although Lorenzana learned of Young's possible involvement before she identified him as the perpetrator, the record does not support the conclusion that her identification was faulty. Lorenzana testified that she visited her brother Andrew in jail approximately one week before she found Young's picture on Facebook. Andrew informed Lorenzana of a rumor that Young had perpetrated the crimes against her. Lorenzana then saw Young's name and picture on Facebook because he was listed as a mutual friend of one of her own Facebook friends. Lorenzana learned that Young was close friends with the male friend who visited her the night of the incident. She testified that her male friend was able to flee the house after Young entered and that she suspected her friend gave Young information that she and Mclemore were the only adults in the home that night and that her brother Andrew had just been taken into custody on drug charges. When Young later testified, he admitted that he was close friends with Lorenzana's male friend. He also admitted that he had a tattoo of a cross on his forearm.

{¶11} As to the description that Mclemore gave, her estimations of Young's height and weight were not accurate. Detective Curry testified, however, that witnesses frequently have

difficulty with their general assessments of height and weight. Both women did testify to the same description of the gun that Young used during the commission of the offense and the tattoo on his forearm. It is not surprising that, given the stressful nature of the events, both women would be focused on the weapon Young used and the tattoo in close proximity to the weapon instead of Young's other features. *See State v. Singfield*, 9th Dist. No. 24576, 2009-Ohio-5945, ¶ 19 (discussing victim recollection in light of weapon focus). Any differences in testimony with regard to the order of the events and which woman searched which room also reasonably could be attributed to the stress of the situation. *See id.* Both women remembered key facts, including Young's tattoo and the fact that he struck both women in the head at some point during the incident. Juan Rodriguez, an officer who reported to the scene, testified that he observed bruises on the heads of both women.

{¶12} Young testified that he could not have committed the crimes in question because he was living with his girlfriend at the time the crimes transpired and was "[p]robably" with her. He admitted, however, that he never told the police that he was with his girlfriend when he was interviewed in connection with the crimes. He also admitted that he had prior convictions for aggravated robbery and aggravated burglary. Moreover, he had a large cross tattoo on his forearm. While the police were never able to recover the gun used or property stolen here, Detective Curry testified that those items "move quickly on the streets" and that he did not expect to recover them given the three month delay between the commission of the crime and Young's arrest.

{¶13} Based on our review of the record, we cannot conclude that the trier of fact lost its way in convicting Young. The trial court was in the best position to observe the demeanor of the witnesses, weigh their credibility, and resolve any conflicts accordingly. *See State v. Crowell*,

9th Dist. No. 10CA0005, 2010-Ohio-6245, ¶ 26. Although there were inconsistencies in the victims' testimony, the trial court could have attributed those inconsistencies to the stress of the situation. Young's argument that his convictions are against the manifest weight of the evidence lacks merit. Consequently, his sole assignment of error is overruled.

III

{¶14} Young's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

PAUL A. GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.